Jonas Jacobson (Cal. Bar. No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Stephen Ferruolo (Cal. Bar No. 364158)
sferruolo@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LINDA RIME, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>EMBRACE PET INSURANCE AGENCY, LLC,<br><br>*Defendant*. | Case No. 5:26-cv-00460<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

## Table of Contents


I. Introduction. 1

II. Parties. 3

III. Jurisdiction and Venue. 3

IV. Facts. 3

A. Drip pricing is unfair and illegal. 3

B. Embrace's drip pricing. 7

C. Plaintiff bought an Embrace policy and was charged an illegal $25 admin fee and monthly billing fees. 13

D. No adequate remedy at law. 14

V. Class Action Allegations. 14

VI. Claims. 15

Count 1: California Unfair Competition Law (UCL) 15

Count 2: False Advertising Law (FAL) 17

Count 3: Unjust Enrichment 18

VII. Relief. 18

## I. Introduction.

1. In recent years, companies that sell goods and services have sought to boost revenues by adding junk fees. One example is the use of "drip pricing," where companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process."[1] Such fees are deceptive or unfair "because they are disclosed only at a later stage in the consumer's purchasing process."[2] "Drip pricing interferes with consumers' ability to price compare. It manipulates consumers into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[3]

2. This is costly for consumers, who "are paying billions of dollars a year in unnecessary, unavoidable, or surprise charges that inflate prices while adding little to no value. These junk fees, which are often not disclosed upfront and only revealed after a consumer has decided to buy something, obscure true prices and dilute the forces of market competition that are the bedrock of the U.S economy."[4] As the Federal Trade Commission notes, "American consumers, workers, and small businesses today are swamped with junk fees that frustrate consumers, erode trust, impair comparison shopping, and facilitate inflation."[5]

---

[1] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-%20FINAL.pdf

[2] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

[3] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-%20FINAL.pdf

[4] https://bidenwhitehouse.archives.gov/wp-content/uploads/2023/03/WH-Junk-Fees-Guide-for-States.pdf

[5] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

3. Drip pricing is illegal under California law. For example, the Unfair Competition Law (UCL) broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising" (Cal. Bus. & Prof. Code § 17200).

4. In addition, in 2023, California passed SB 478, which expressly targets drip pricing. It states, "This act is intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service." Ex. 1 (SB 478).[6]

5. SB 478 amended the Consumer Legal Remedies Act (CLRA) to make drip pricing illegal under the CLRA beginning on July 1, 2024. But the legislature made clear that drip pricing was already illegal under California's other consumer protection statutes: "This practice…is prohibited by existing statutes, including the Unfair Competition Law (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code) and the False Advertising Law (Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code)." SB 478(b).

6. Thus, drip pricing is, and always has been, illegal under California's UCL and False Advertising Law.

7. Defendant Embrace Pet Insurance Agency, LLC ("Embrace") is a pet insurance company. It enrolls customers via its website, www.embracepetinsurance.com. After customers commit to the quote process by entering information about their pet and customizing their deductible and premium, Embrace quotes them a "Total" monthly price for the insurance. But in truth, it's not the total. In the final step of the checkout process, Embrace tags on a $25 "administrative" junk fee, and a $1 per month junk fee

[6] SB 478, available at https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202320240SB478 (attached as Exhibit 1).

for monthly billing. At this point, consumers are committed to the process and just eat the junk fees, rather than shopping around. This is why drip pricing is illegal.

8. Plaintiff is a California consumer who bought pet insurance from Embrace and was illegally charged a $25 administrative fee and a $1 per month billing fee. Plaintiff brings this case for California Embrace customers who were also charged these illegal junk fees.

## II. Parties.

9. Plaintiff Linda Rime is domiciled in Corona, California.

10. The proposed class includes citizens of California.

11. Defendant Embrace Pet Insurance Agency, LLC is an entity organized in Ohio with its principal place of business in Beachwood, Ohio.

## III. Jurisdiction and Venue.

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

13. The Court has personal jurisdiction over Defendant because Defendant sold insurance policies to consumers in California, including to Plaintiff.

14. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale of a policy to Plaintiff.

## IV. Facts.

### A. Drip pricing is unfair and illegal.

15. "As more and more commerce has moved online, so too have manipulative design practices—termed 'dark patterns'" that "trick or manipulate users into making

choices they would not otherwise have made and that may cause harm." Ex. 2 (FTC Dark Patterns Report) at 2.[7]

16. One example of a dark pattern is drip pricing, in which companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process." *Id.* at 8-9. Companies advertise one price, and then load the purchase up with additional junk fees at the end of the checkout process. The goal of this is to conceal the true cost of the product or service up front, and prevent comparison shopping. The consumer is lured in based on the lower advertised price, but ends up paying more because of junk fees that are tacked on at the end. As the FTC found, "consumers feel committed to a purchase by the time they reach the checkout screen." *Id.* at 9. Consumers are then more likely to just eat the extra fees, rather than shopping around. *Id.*

17. The Federal Trade Commission (FTC) has stated that junk fees are "deceptive or unfair," "because they are disclosed only at a later stage in the consumer's purchasing process." Ex. 3 (FTC Notice of Drip Pricing Rule).[8] "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase." Ex. 2 (FTC Dark Patterns Report) at 9. By then, consumers have already committed to the purchase. *Id.*

18. Drip pricing "costs consumers money." Research shows that consumers "ended up spending about 20% more money" on websites that used drip pricing compared to websites that do not. *Id.*

---

[7] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-%20FINAL.pdf (attached as Exhibit 2).

[8] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011 (attached as Exhibit 3).

19. In addition, it harms competition because it can "weaken competition by making it harder for consumers to price-compare across sellers. An honest business that sets forth the total price of its product at the outset will be at a significant disadvantage when compared to a seller that advertises an artificially low price to draw consumers in, then adds mandatory charges late in the transaction." *Id.*

20. Drip pricing also artificially drives up the price of products (drives a wrongful price premium). When the full (and more expensive) price of a product is disclosed up front, this reduces demand and "put[s] downward pressure on prices" that companies can charge. Ex. 4 (FTC Final Drip Pricing Rule).[9] In contrast, when a lower price is disclosed up front, to lure consumers into the purchase process, and then junk fees are tagged on late in the transaction, this artificially increases demand (completed sales) and thus increases the amount that companies can charge.

21. Thus, drip pricing harms consumers and weakens competition in multiple ways. And these "practices have no countervailing benefits to consumers and competition—they simply make it more difficult for consumers to comparison shop and for truthful businesses to compete on price." Ex. 5 (FTC Proposed Drip Pricing Rule).[10] Drip pricing "is a quintessential example of bait-and-switch pricing and is a practice that falls squarely within the scope of the [FTC's] long history of work to protect consumers." Ex. 4 (FTC Final Drip Pricing Rule).

22. The FTC has warned that "companies should include any unavoidable and mandatory fees in the upfront, advertised price." Ex. 2 (FTC Dark Patterns Report) at 9. "[F]ailure to do so has the potential to deceive consumers in violation of the Federal Trade Commission Act (FTC Act)." *Id.*

---

[9] https://www.federalregister.gov/documents/2025/01/10/2024-30293/trade-regulation-rule-on-unfair-or-deceptive-fees (attached as Exhibit 4).

[10] https://www.federalregister.gov/documents/2023/11/09/2023-24234/trade-regulation-rule-on-unfair-or-deceptive-fees (attached as Exhibit 5).

23. Because drip pricing is unfair and deceptive, it is also illegal under the FTC Act. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)(1), prohibits "unfair or deceptive acts or practices in or affecting commerce." And, the FTC has "federal rule-making authority to issue industry-wide regulations (Rules and Guides) to deal with common unfair or deceptive practices and unfair methods of competition."[11] The FTC has enacted a final rule specifically regulating hidden fees in the hotel and event ticket industries, because such industries are a hotbed of drip pricing. Ex. 4 (FTC Final Drip Pricing Rule) ("the Commission finds that bait-and-switch pricing and misleading fees and charges are prevalent economy-wide, but chooses to begin by tackling these practices in the live-event ticketing and short-term lodging industries, where the Commission first began evaluating drip pricing more than a decade ago and which have a long history of harming consumers and businesses."). And in doing so, the FTC made clear that such practices in other industries continue to violate section 5. *Id.* ("The Commission will rely on its existing section 5 authority in pursuing case-by-case enforcement actions against businesses in other industries that engage in the specific unfair and deceptive pricing practices that are the subject of the industry-specific coverage in this rule."); *id.* (The "Commission will address [such] unfair and deceptive pricing practices in other industries using its existing section 5 authority.").

24. Drip pricing is also illegal under California law. As explained above, this unfair and deceptive practice has long been prohibited under California law, including under California's UCL and FAL.

---

[11] https://www.ftc.gov/enforcement/rulemaking

**B. Embrace's drip pricing.**

25. On Embrace's website (www.embracepetinsurance.com), consumers start the purchase process by clicking "Click for Price" or "Get Quote":




26. The "Click for Price" and "Get Quote" buttons tell reasonable consumers that they are going to see the "price" of the insurance, i.e., what it costs them to buy the insurance.[12]

27. On the "Pet Info" screen, consumers must then enter the following information about their pet:

[12] A "price" is "the amount of money given or set as consideration for the sale of a specified thing." *Price*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/price.




28. This page tells consumers that, after they enter information about their pet, they will get a "Customized Quote," i.e., they will see how much the insurance will cost. Below the "Select Coverage" button, the screen confirms that consumers will see "Just your price," i.e., they will see how much it will cost them to buy insurance.

29. Consumers then click "Select Coverage" to advance to the "select a policy" screen. This is what they see:


embrace PET INSURANCE
Questions? We can help.
(800) 660-8726
Kylo's Plan
Add A Pet
Select Kylo's Plan
Mixed Breed - Medium (31-50 lbs), 8 years old, Male Edit Pet
Annual Reimbursement Limit
$2,000
Annual Deductible
$1,000 $750 $500 $250 $100
Reimbursement Percentage
70% 80% 90%
Accident & Illness Plan
$33.37
Per Month
Customize your plan to fit your budget.
Need help choosing the right plan?
Our pet insurance advisors will recommend the best coverage for your pet.
(800) 660-8726 for a complete list of options
Optional Coverages
Kylo's Total: $33.37 / month
Review Plan
Reimburses exam fees for covered incidents.
What's this for?
Your exam fees related to a covered incident get reimbursed. That's one less vet bill to worry about.
Why it's important
Pet parents can expect to pay anywhere from $50 to $100 for a vet exam. With exam fee coverage you can get your pet seen by a vet worry-free.
*Routine exam fee coverage not included.
Reimburses prescriptions used to treat or manage covered conditions.
What's this for?
We reimburse for vet-prescribed medications used to treat incidents covered by your policy.
What's Covered by Embrace
Accident & Illness plan includes:
Cancer treatment
Congenital conditions
Dental trauma
Genetic conditions
Chronic conditions
Orthopedic conditions
Procedures we cover include:
Complimentary therapies
General, specialist & ER care
Diagnostic testing
Physical therapy
Hospitalization & surgery
Lab tests & biopsies
And so much more... we cover necessary care related to your pet's unexpected accidents or illnesses.
Get Wellness Rewards for Routine Care*
Wellness Rewards is a routine care membership that reimburses you for everyday veterinary, training and grooming costs. This noninsurance add-on is the perfect complement to your accident and illness plan and offers rewards for being proactive with your pet's care.
Use your funds on any of the following:
Wellness exams
Vaccinations
Spay/neuter surgery
Grooming
Pet activity monitors
Cremation or burial
Nutritional supplements
Training
Flea, tick, & Heartworm meds
...and more!
Select your annual reimbursement:
$300 Annually $22.92 /month
$500 Annually $39.58 /month
$700 Annually $56.25 /month
No Routine Care Plan
Immediate access to annual funds
$25 Bonus
Exclusive offers from pet brands
Flexible to your pet's needs

30. On this page, consumers spend time thinking about and customizing their deductible and reimbursement percentage. This requires consumers to put time and thought into how much risk they want to take versus the premium they want to pay. Next to the "Review Plan" button, the "Total" cost is displayed ($33.37/month):




31. As consumers customize their plan, this "Total" amount changes. So, on this page, consumers put a significant amount of time and thought into selecting the right plan for them and their pet, based on the stated protections, their budget, and the advertised "Total" price.

32. And the way this information is displayed says that it is the monthly "Total," i.e., that there are no additional costs. The "Total" monthly price ($33.37/month) is displayed in large white font. A reasonable consumer looking at this "Total" would believe that is the total price they will pay, not just part of the price they will pay (i.e., not the "Total"). And a reasonable consumer would not be on the lookout for additional fees after seeing an advertised "Total."

33. Plus, by the time consumers see this "Total," Embrace has referred to it as a "price" or "quote" multiple times. With these up front displays about a "price" or "quote" reasonable consumers understand that the "Total" is an advertised price, and that that is the total price they will pay to purchase the insurance.

34. The "Total" price that Embrace quotes, however, is not really the total price. Once a consumer clicks "Review Your Plan," they arrive at the "Plan Summary" page:


Plan Summary
Kylo
8 years old, Male, Mixed Breed - Medium (31-50 lbs)
Edit Pet
$33.37 / month
Accident & Illness
Edit Plan
Annual Maximum $2,000
Annual Deductible $1,000
Reimbursement 70%
Exam Fees Not Included
Prescription Drugs Not Included
Routine Wellness Plan
$300 Annually $22.92 /month
$500 Annually $39.58 /month
$700 Annually $56.25 /month
No Routine Care Plan
Add Another Pet
SAVE 10%
Insurance $33.37
Billing fee $1.00
Total Per Month $34.37
One Time Admin Fee $25.00
Total Billed Today $59.37
Billing Information
How would you like to pay?
Annually
Monthly
Save $12 - Choose annual payment & your monthly billing fee is waived
First Name
Last Name
Email Address
spamtiger600@gmail.com
Change Email
Phone Number
Mailing Address
Address
Enter a location
Apt / Unit
City
Select
Zip Code
Billing Address
Mailing and billing addresses are the same
Payment Information
Card
Google Pay
US bank account
Card number
1234 1234 1234 1234
Expiration date
MM / YY
Security code
CVC
Country
United States
ZIP code
12345
By providing your card information, you allow Embrace Pet Insurance to charge your card for future payments in accordance with their terms.
Powered by stripe
SECURE
Vet Information
Have all pets listed on this policy been to a vet within the last 12 months?
Yes
No
For illness coverage to start, your pet(s) must have had a full exam by a veterinarian in the twelve (12) months prior to the policy start date or within the first 14 days of coverage.




35. Here, only after a consumer has entered all the information about their pet, customized their plan, and chosen to move forward in the purchase process based on the "Total" price quote, the website states, in small print, that there will be a $25 admin fee and a $1.00 billing fee per month (if the consumer wants to pay monthly). So contrary to what Embrace says up front, the "Total" price consumers pay is not $33.37/month. The first month includes a $25 admin fee, and if a consumer pays monthly, all months include a $1 billing fee.

36. This $1 billing fee is mandatory for any consumer who wants to pay monthly. And many reasonable consumers need to pay monthly and not annually. For example, a consumer may not have the budget to pay for a year up front, and thus paying monthly can be their only choice.

37. Because Embrace has already advertised a "Total" price, reasonable consumers are not expecting, and are not on the lookout for, any additional fees. Accordingly, reasonable consumers may complete their purchase without even noticing the additional fees Embrace adds.

38. At this point, a consumer has already gone through multiple screens, gotten an original quote for a monthly price, entered information about their pet, and considered and selected the premium that they want to pay based on the stated "Total" monthly price. So even if a consumer did notice the junk administrative fee or the monthly billing fee, there is significant pressure to just go through with the purchase, instead of shopping around and having to start the process all over again, with a different pet insurance company. This is why drip pricing is an effective way for companies to make extra money. And it is why drip pricing is illegal, regardless of whether consumers ultimately notice the junk fees before paying.

**C. Plaintiff bought an Embrace policy and was charged an illegal $25 admin fee and monthly billing fees.**

39. On or around June 15, 2025, while living in Corona, California, Ms. Rime purchased an Embrace pet insurance policy from the Embrace website, which she paid for monthly. The purchase process was substantially similar to the process shown above.

40. Ms. Rime read and relied on Embrace's "Total" "per month" quote of $33.88 per month[13](which did not disclose the administrative fee or billing fee), in deciding to continue with the purchase (as opposed to shopping around). She did not expect additional junk fees to be tacked on at the end. Ms. Rime invested substantial time and effort entering pet details to receive the quote, choosing her deductible, and customizing and considering the tradeoff between the deductible and desired coverage. Embrace's failure to disclose the total price up front was a substantial factor in her decision to move forward and ultimately complete the purchase, as opposed to looking at other plans. She was not expecting and did not notice the $25 admin fee or $1 billing fee when she made her purchase. Embrace charged her a $25 junk administrative fee and is still charging her a $1 junk monthly billing fee.

---

[13] This price is reflected in her declarations page.

41. This drip pricing also allowed Embrace to charge Ms. Rime (and other Class members) a price premium. Plaintiff, and other Class members, paid more for their Embrace insurance policies than they otherwise would have because the drip pricing artificially increased demand for Embrace's insurance, which increases the prices that Embrace can charge consumers.

**D. No adequate remedy at law.**

42. The CLRA does not apply to insurance. *Uyanik v. Wawanesa Gen. Ins. Co.*, U.S. App. LEXIS 31642, at *3 (9th Cir. 2023). Thus, Plaintiff has no remedy at law and can only bring equitable claims. This is one reason that the UCL and FAL more broadly protect consumers against junk fees, in addition to the CLRA.

43. Plaintiff also seeks an injunction. Legal remedies would be inadequate because they would not stop Defendant from continuing to engage in the practices described above.

44. Plaintiff faces an imminent threat of future harm. Plaintiff is currently being charged a $1 per month illegal billing fee for her pet insurance policy. Without an injunction, Plaintiff will continue to be charged this fee each month.

**V. Class Action Allegations.**

45. Plaintiff brings the asserted claims on behalf of the proposed class of:

- All California residents who, within the applicable statute of limitations, purchased pet insurance from Embrace's website and were charged an administrative fee or monthly billing fee.

The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been

finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity.**

46. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are at least tens of thousands of class members.

47. Class members can be identified through Defendant's sales records and public notice.

**Predominance of Common Questions.**

48. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- whether Embrace's drip pricing is illegal under the UCL and FAL;
- restitution needed to reasonably compensate Plaintiff and the proposed class.

**Typicality & Adequacy.**

49. Plaintiff's claims are typical of the proposed class. There are no conflicts of interest between Plaintiff and the Class.

**Superiority.**

50. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

### <u>Count 1:</u> California Unfair Competition Law (UCL)

### (By Plaintiff and the Class)

51. Plaintiff incorporates the facts alleged above.

52. Plaintiff brings this cause of action on behalf of herself and members of the Class.

53. Defendant has violated California's Unfair Competition Law (UCL) by engaging in deceptive, unfair, and unlawful conduct.

54. Unlawful. As alleged in detail above, Defendant engaged in unlawful conduct by violating the FTC Act.

55. Unfair. Defendant's conduct is unfair because the harm to consumers greatly outweighs the public utility. There is no public utility to using drip pricing and junk fees. Junk fees mislead consumers on price, and prevent comparison shopping and competition. This injury was not outweighed by any countervailing benefits to consumers or competition. Late-disclosed fees only injure healthy competition and harm consumers. Companies could easily disclose any such fees upfront. And as the FTC has found, reasonable consumers get trapped by drip pricing and cannot avoid the junk fees.

56. Defendant violated established public policy by violating the FTC Act. The unfairness of this practice is tethered to a legislatively declared policy (that of the FTC Act). And as addressed above, the California legislature expressly stated that drip pricing has long been illegal under the UCL, FAL, and CLRA.

57. Defendant's conduct was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

58. Fraudulent. As alleged in detail above, Embrace's drip pricing misleads reasonable consumers with lower, up front prices that do not include the administrative fee or the billing fee. Because Embrace displays a lower, up front price and suggests that price is the total, reasonable consumers are not looking for, and can miss, junk fees tagged on at the end. Or if consumers do notice the junk fees at the end, they have already been deceived into continuing with (and committing time and effort to) the purchase based on the lower up front price, rather than shopping around. Plaintiff was harmed as a result of Defendant's violations. As alleged in detail above, Plaintiff relied

on the lower quoted "Total" price (that did not include the administrative fee or billing fee). And Defendant's drip pricing was a substantial factor in Plaintiff's decision to purchase Embrace insurance when she did, rather than shopping around.

59. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees; and (2) they overpaid for insurance because it was sold at a price premium due to Defendant's drip pricing.

**Count 2: False Advertising Law (FAL)**

**(By Plaintiff and the Class)**

60. Plaintiff incorporates the facts alleged above.

61. Plaintiff brings this cause of action for herself and the Class.

62. Section 17500 of the False Advertising Law prohibits misleading advertising. Cal. Bus. & Prof. Code § 17500.

63. As alleged in detail above, Embrace's drip pricing misleads consumers with lower, up front prices that do not include the admin and billing fees.

64. Embrace knows, or reasonably should know, that this practice is misleading. Indeed, Embrace decides to include the admin and billing fees only at the end (instead of up front) because it knows that this drip pricing will increase sales (while still allowing Embrace to profit from the junk fees).

65. As alleged in detail above, Plaintiff saw and relied on Embrace's lower, up front pricing (that did not include the junk fees) and this up front pricing was a substantial factor in Plaintiff's decision to make the purchase.

66. Classwide reliance can be inferred because Defendant's drip pricing was material, i.e., a reasonable consumer would consider the lower, up front pricing important in deciding whether to buy Embrace insurance, versus shopping around. Reasonable consumers are not looking for or expecting a junk-fee price increase from the up front price and can miss the junk fees. Or if consumers do notice the junk fees at

the end, they have already been deceived into continuing with (and committing time and effort to) the purchase based on the lower up front price, rather than shopping around.

67. Plaintiff and the class were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees, and/or (2) they overpaid for Embrace insurance because the policies are sold at a price premium due to the hidden fees.

**Count 3: Unjust Enrichment**

**(By Plaintiff and the Class)**

68. Plaintiff incorporates the facts alleged above.

69. Plaintiff brings this cause of action on behalf of herself and members of the Class.

70. Because Embrace's administrative fee and billing fees are illegal, they are void as a purported contract term.

71. As alleged in detail above, Defendant charged Plaintiff and the Class these illegal administrative fees.

72. In this way, Defendant received a direct and unjust benefit, at Plaintiff and the Class's expense.

73. Plaintiff and the Class seek the return of this unjust benefit (the illegal fees).

## VII. Relief.

74. Plaintiff seeks the following relief for herself and the Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

Dated: May 15, 2026

Respectfully submitted,

By: */s/ Stephen Ferruolo*

Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Stephen Ferruolo (Cal. Bar No. 364158)
sferruolo@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*